UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SHURON ANTWOUNE HESTER,

        Petitioner,

vs.                            Case No. 3:17-cv-929-J-39PDB

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

**ORDER**

**I.  INTRODUCTION**

Through a Petition under 28 U.S.C. § 2254 for Writ of Habeas
Corpus by a Person in State Custody (Petition) (Doc. 1),
Petitioner, Shuron Antwoune Hester, challenges his state court
(Duval County) conviction for one count of sexual battery, one
count of lewd or lascivious molestation, and two counts of child
abuse. Respondents, in response, filed an Answer to Petition for
Writ of Habeas Corpus (Response) (Doc. 31).[1] Petitioner opted to

_____

[1] The Court hereinafter refers to the Exhibits to Answer to
Petition for Writ of Habeas Corpus (Doc. 31) as "Ex." Where
provided, the page numbers referenced in this opinion are the Bates
stamp numbers at the bottom of each page of the exhibit.
Otherwise, the page number on the document will be referenced.

file a Reply to the State's Response to the Petition for Writ of Habeas Corpus (Reply) (Doc. 32).

## II. EVIDENTIARY HEARING

Petitioner has the burden to establish a need for an evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012). In this case, the pertinent facts are fully developed in this record or the record otherwise precludes habeas relief;[2] therefore, the Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004). Petitioner has not met his burden as the record refutes the asserted factual allegations or otherwise precludes habeas relief. Thus, the Court finds Petitioner is not entitled to an evidentiary hearing. Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

## III. PETITION

The Petition presents eleven grounds for habeas relief; however, Petitioner abandoned ground eleven. See Notice of

---

[2] The Court notes Petitioner received an evidentiary hearing on some grounds in the state court.

Abandonment of Claim (Doc. 6). The remaining ten grounds before the Court are: (1) the trial court erred in allowing testimony regarding allegations that related to separate child abuse charges against Petitioner; (2) the ineffective assistance of counsel for failure to object to defects in count 3 of the information; (3) the ineffective assistance of counsel for failure to conduct a meaningful voir dire by failing to question the prospective jurors as to their state of mind if Petitioner did not testify or present a defense; (4) the ineffective assistance of counsel for failure to object to numerous improper closing remarks; (5) the denial of due process because the evidence was legally insufficient to sustain his convictions for sexual battery and lewd and lascivious molestation; (6) the ineffective assistance of counsel for failure to request a jury instruction as to the permissive lesser included offenses for lewd and lascivious molestation; (7) the ineffective assistance of counsel for failure to impeach the victim with prior inconsistent statements; (8) the ineffective assistance of counsel for failure to impeach Detective Maynard's testimony; (9) the ineffective assistance of counsel for failure to investigate, consult, and obtain an expert witness to refute Ms. Green's testimony; and (10) the ineffective assistance of counsel for failure to videotape the deposition of the victim, A.B.[3]

---

[3] The Court will refer to the minor victim as "the victim" or

## IV. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. See 28 U.S.C. § 2254. This statute "imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam). The AEDPA statute: "respects the authority and ability of state courts and their dedication to the protection of constitutional rights." Id. Therefore, "[u]nder AEDPA, error is not enough; even clear error is not enough." Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1349 (11th Cir.) (citing Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017) (per curiam)), cert. denied, 2019 WL 5150550 (2019).

Applying the statute as amended by AEDPA, federal courts may not grant habeas relief unless one of the claims: "(1)'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' 28 U.S.C. § 2254(d)." Nance v. Warden, Ga. Diagnostic Prison, 922 F.3d 1298, 1300-1301 (11th Cir. 2019).

---

reference her initials, "A.B."

Thus, in order to obtain habeas relief, the state court decision must unquestionably conflict with Supreme Court precedent. Harrington v. Richter, 562 U.S. 86, 102 (2011). If some fair-minded jurists could agree with the lower court's decision, habeas relief must be denied. Meders, 911 F.3d at 1351. As noted in Richter, unless the petitioner shows the state court's ruling was so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement, there is no entitlement to habeas relief. Burt v. Titlow, 571 U.S. 12, 19-20 (2013).

In undertaking its review, this Court is not obliged "to flyspeck the state court order or grade it." Meders, 911 F.3d at 1349. Indeed, specificity and thoroughness of the state court decision is not required; even if the state court fails to provide rationale or reasoning, AEDPA deference is due "absent a conspicuous misapplication of Supreme Court precedent." Id. at 1350 (citation and quotation marks omitted).

Of importance, a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). But, this presumption of correctness applies only to findings of fact, not mixed determinations of law and fact. Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the

distinction between a pure question of fact from a mixed question of law and fact), <u>cert</u>. <u>denied</u>, 573 U.S. 906 (2014).

Where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." <u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018) (Wilson).

Once a claim is adjudicated in state court and a prisoner seeks relief in the federal court system, AEDPA's formidable barrier to habeas relief comes into play, and it is very difficult for a petitioner to prevail under this stringent standard. As such, state-court judgments will not easily be set aside once the Court employs this highly deferential standard that is intentionally difficult to meet. <u>See</u> <u>Richter</u>, 562 U.S. at 102. Although AEDPA does not impose a complete bar to issuing a writ, it severely limits those occasions to those "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts" with Supreme Court precedent. <u>Id</u>. In sum, application of the standard set forth in 28 U.S.C. § 2254(d) ensures that habeas corpus is a guard against extreme malfunctions

in the state criminal justice systems, and not a mechanism for ordinary error correction.  <u>Richter</u>, 562 U.S. at 102-103 (citation and quotation marks omitted).

## V.  IN CUSTODY

Petitioner does not satisfy the "in custody" requirement of 28 U.S.C. § 2254(a) as to the two child abuse counts (state case nos. 2012-CF-5805 & 2012-CF-5806).  Response at 10-11.  The trial court sentenced Petitioner to concurrent sentences of 468 days and credited him with 468 days of time incarcerated for these convictions.  Ex. K.  Therefore, Petitioner's sentences for child abuse expired at inception.

Petitioner does meet the "in custody" requirement as to the sexual battery and lewd and lascivious molestations counts.  The trial court granted a motion for judgment of acquittal as to an additional count of sexual battery, charged in count 2 of the information.  Thus, the only convictions open to collateral attack in this federal habeas proceeding are counts one (sexual battery) and count three (lewd and lascivious molestation, which became count two at trial).

## VI.  EXHAUSTION AND PROCEDURAL DEFAULT

In ground one Petitioner claims the trial court erred in allowing testimony regarding allegations that related to separate child abuse charges.  Petition at 4.  Respondents assert

Petitioner never exhausted a claim of constitutional dimension with respect to ground one and Petitioner does not present a claim of constitutional dimension in this Petition. Respondents submit that Petitioner raises a claim of trial court error, a state law claim, by asserting: "[t]he trial court erred in allowing testimony that the Petitioner had previously physically abused A.B. the victim in this case, by hitting her with his hand or with an electrical type cord." Petition at 4.

Petitioner raised this same contention on direct appeal. Ex. F at 18-25. He argued the evidence was improperly admitted and should have been excluded. Id. at 24.

In addressing the question of exhaustion, this Court must ask whether the claim was raised in the state court proceedings and whether the state court was alerted to the federal nature of the claim:

> Before seeking § 2254 habeas relief in federal court, a petitioner must exhaust all state court remedies available for challenging his conviction. See 28 U.S.C. § 2254(b), (c). For a federal claim to be exhausted, the petitioner must have "fairly presented [it] to the state courts." McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005). The Supreme Court has suggested that a litigant could do so by including in his claim before the state appellate court "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32, 124 S. Ct. 1347, 158 L.Ed.2d 64 (2004). The Court's guidance in Baldwin "must be

applied with common sense and in light of the
purpose      underlying      the      exhaustion
requirement"-namely, giving the state courts
"a meaningful opportunity" to address the
federal claim. McNair, 416 F.3d at 1302. Thus,
a petitioner could not satisfy the exhaustion
requirement merely by presenting the state
court with "all the facts necessary to support
the claim," or by making a "somewhat similar
state law claim." Kelley, 377 F.3d at 1343-
44. Rather, he must make his claims in a manner
that provides the state courts with "the
opportunity to apply controlling legal
principles to the facts bearing upon (his)
[federal] constitutional claim." Id. at 1344
(quotation omitted).

Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-52 (11th Cir.

2012), cert. denied, 568 U.S. 1104 (2013).

In his direct appeal, Petitioner failed to reference the

federal source of law or any case deciding the claim on federal

grounds, and he did not label the claim as federal.   Thus,

Petitioner never gave the state courts a meaningful opportunity to

address a constitutional claim.

After a thorough review of the record before the Court, the

Court concludes Petitioner failed to exhaust a constitutional

claim in the state courts with respect to ground one.  It is clear

from state law that any future attempts at exhaustion would be

futile.   To the extent Petitioner is attempting to raise a

constitutional claim at this juncture, the claim is unexhausted

and procedurally defaulted.

Petitioner has failed to show cause and prejudice or that a fundamental miscarriage of justice will result if the Court does not reach the merits of ground one. Consequently, ground one is due to be denied.

Grounds two, three, five, and eight are also procedurally defaulted. Although Petitioner presented these grounds in his Rule 3.850 post-conviction motion, after denial of post-conviction relief, he did not include these grounds in his Amended Initial Brief of Appellant. Ex. Q. As noted by Respondents, "[a]lthough Petitioner appealed following the circuit court's denial of post-conviction relief after an evidentiary hearing on other grounds, he did not present its summary denial of [these] claims of ineffective assistance of counsel" within his brief on appeal. Response at 28, 37-38, 53, 73. As such, Respondents assert Petitioner has failed to exhaust grounds two, three, five, and eight, and as a result, these grounds are procedurally barred in federal habeas.

The First District Court of Appeal (1st DCA), in 2018, explained:

> Before 2014, Rule 9.141(b)(2) was entitled "Summary Grant or Denial of Motion Without Evidentiary Hearing." Fla. R. App. P. 9.141(b)(2) (2013). This rule set forth special appellate rules, which provided for a limited record and limited briefing, and applied whenever the trial court denied the motion without *any* evidentiary hearing. **If the**

> **trial court held an evidentiary hearing, this
> rule did not apply, even if the defendant was
> appealing the denial of a claim for which the
> court did not hold an evidentiary hearing.** See
> Williams v. State, 24 So. 3d 1252, 1252 n.1
> (Fla. 1st DCA 2009). Instead, Rule 9.141(b)(3)
> (entitled "Grant or Denial of Motion after
> Evidentiary Hearing"), which contains
> essentially routine appellate rules regarding
> the record and briefing, applied to appeals of
> such mixed petitions. Id.
>
> This rule was made even clearer in 2014,
> when the Supreme Court amended the title of
> Rule 9.141(b)(2) to read "Summary Grant or
> Denial of All Claims Raised in a Motion
> Without Evidentiary Hearing." Fla. R. App. P.
> 9.141(b)(2) (2014) (emphasis supplied). See In
> re Amendments to Fla. Rules of Appellate
> Procedure, 183 So. 3d 245, 255 (Fla. 2014). It
> is now beyond dispute that Rule 9.141(b)(2)
> applies *only* when the trial court holds no
> evidentiary hearing at all.

Cuomo v. State, 257 So. 3d 584, 586 (Fla. 1st DCA 2018) (emphasis

added) (footnote omitted).

Upon review, effective January 1, 2015, the 2014 changes to

the rule made it abundantly clear that if an evidentiary hearing

is held on one or more claims, briefs must be filed.   Rule

9.141(b)(3), Fla. R. App. P.  In Florida, the issue must not only

be raised in the appeal brief, it must contain argument or be

deemed abandoned.  Atwater v. Crosby, 451 F.3d 799, 810 (11th Cir.

2006), cert. denied, 549 U.S. 1124 (2007); Marshall v. State, 854

So. 2d 1235, 1252 (Fla. 2003) (per curiam) (citing Shere v. State,

742 So. 2d 215, 218 n.6 (Fla. 1999) (per curiam)); <u>Carroll v.</u>
<u>State</u>, 815 So. 2d 601, 609 n.7 (Fla. 2002).

Furthermore, a petitioner must exhaust state court remedies
prior to presenting a claim to this Court:

> An applicant's federal writ of habeas
> corpus will not be granted unless the
> applicant exhausted his state court remedies.
> 28 U.S.C. § 2254(b), (c). A claim must be
> presented to the highest court of the state to
> satisfy the exhaustion requirement.
> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838 (1999);
> <u>Richardson v. Procunier</u>, 762 F.2d 429, 430(5th
> Cir. 1985); <u>Carter v. Estelle</u>, 677 F.2d 427,
> 443 (5th Cir. 1982). In a Florida non-capital
> case, this means the applicant must have
> presented his claims in a district court of
> appeal. <u>Upshaw v. Singletary</u>, 70 F.3d 576, 579
> (11th Cir. 1995). The claims must be presented
> in State court in a procedurally correct
> manner. <u>Id</u>. Moreover, the habeas applicant
> must have presented the State courts with the
> same federal constitutional claim that is
> being asserted in the habeas petition. "It is
> not sufficient merely that the federal habeas
> petitioner has been through the state courts
> ... nor is it sufficient that all the facts
> necessary to support the claim were before the
> state courts or that a somewhat similar state
> law claim was made." <u>Kelley v. Sec'y, Dep't of</u>
> <u>Corr.</u>, 377 F.3d 1317 (11th Cir. 2004) (citing
> <u>Picard v. Connor</u>, 404 U.S. 270, 275-76
> (1971)); <u>Anderson v. Harless</u>, 459 U.S. 4, 6
> (1982). A petitioner is required to present
> his claims to the state courts such that the
> courts have the "opportunity to apply
> controlling legal principles to the facts
> bearing upon [his] constitutional claim."
> <u>Picard v. Connor</u>, 404 U.S. 270, 275-77 (1971).
> To satisfy this requirement, "[a] petitioner
> must alert state courts to any federal claims
> to allow the state courts an opportunity to
> review and correct the claimed violations of

> his federal rights." <u>Jimenez v. Fla. Dep't of
> Corr.</u>, 481 F.3d 1337 (11th Cir. 2007) (citing
> <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995).)
> "Thus, to exhaust state remedies fully the
> petitioner must make the state court aware
> that the claims asserted present federal
> constitutional issues." <u>Snowden v.
> Singletary</u>, 135 F.3d 732, 735 (11th Cir.
> 1998).

<u>Aguilera v. Jones</u>, No. 15-CV-20406, 2016 WL 791506, at *7 (S.D. Fla. Jan. 13, 2016), <u>report and recommendation adopted by</u> 2016 WL 932808 (S.D. Fla. Mar. 10, 2016).

By failing to present grounds two, three, five, and eight in his appeal brief and include argument, Petitioner abandoned these grounds. As such, he did not properly exhaust these claims in state court. <u>See</u> <u>Atwater</u>, 451 F.3d at 810 (finding failure to meet the exhaustion requirement would result in the claims being procedurally barred, resulting in a procedural default for federal habeas purposes).

In his Reply, Petitioner does not attempt to show cause and prejudice or that a fundamental miscarriage of justice will result if grounds two, three, five, and eight are not addressed on the merits. Due to Petitioner's abandonment of the claims in the state court, the Court finds these claims unexhausted and procedurally defaulted. Thus, Petitioner is procedurally barred from raising these grounds and the Court will not address the merits of grounds two, three, five, and eight.

## VII. REMAINING GROUNDS

The remaining grounds are four, six, seven, nine, and ten. Petitioner adequately exhausted these claims of ineffective assistance of trial counsel in the state court system by presenting the claims in his post-conviction motion and filing an appellate brief containing argument. Ex. P; Ex. Q. The 1st DCA affirmed per curiam. Ex. W. The mandate issued on May 15, 2017. Id.

In his remaining grounds, Petitioner raises claims of ineffective assistance of trial counsel. To prevail on a Sixth Amendment claim, Petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). See Brewster v. Hetzel, 913 F.3d 1042, 1051-52 (11th Cir. 2019) (reviewing court may begin with either component).

To obtain habeas relief, a counsel's errors must be so great that they adversely affect the defense. To satisfy this prejudice prong, the reasonable probability of a different result must be "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

The standard created by Strickland is a highly deferential standard, requiring a most deferential review of counsel's decisions. Richter, 562 U.S. at 105. Not only is there the "Strickland mandated one layer of deference to the decisions of trial counsel[,]" there is the added layer of deference required by AEDPA: the one to a state court's decision. Nance, 922 F.3d at 1303. Thus,

> Given the double deference due, it is a "rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." Johnson v. Sec'y, DOC, 643 F.3d 907, 911 (11th Cir. 2011). And, for the reasons we have already discussed, it is rarer still for merit to be found in a claim that challenges a strategic decision of counsel.

Nance, 922 F.3d at 1303.

## A. Ground Four

In ground four, Petitioner raises a claim of the ineffective assistance of counsel for failure to object to numerous improper closing remarks of the prosecutor. The trial court set forth the two-pronged Strickland standard before addressing the grounds for relief. Ex. P at 244-45. In a very thorough and well-reasoned decision, the trial court rejected Petitioner's claim of ineffectiveness.

The trial court succinctly set forth the claim and the relevant law:

> In Ground Three, Defendant alleges
> counsel was ineffective for failing to object
> to improper comments by the State during
> closing argument. The proper method for
> reviewing the effect and therefore, the
> prejudice of a prosecutor's comments, is to
> place them in context. <u>Rose v. State</u>, 985 So.
> 2d 500, 508 (Fla. 2008); <u>Ham v. State</u>, 580 So.
> 2d 868 (Fla. 1991). Attorneys are allowed
> wide latitude to argue to the jury during
> closing argument. <u>Breedlove v. State</u>, 413 So.
> 2d 1, 8 (Fla. 1982). Attorneys may also draw
> logical inferences and advance legitimate
> arguments in their closing statements.
> <u>Thomas v. State</u>, 748 So. 2d 970, 984 (Fla.
> 1984). "[T]rial counsel cannot be deemed
> ineffective for failing to object to arguments
> that are proper." <u>Rogers v. State</u>, 957 So.
> 2d 539, 549 (Fla. 2007). In order for the
> prosecutor's comments to merit relief, the
> comments must either deprive the defendant of
> a fair and impartial trial, materially
> contribute to the conviction, be so harmful or
> fundamentally tainted as to require a new
> trial, or be so inflammatory that they might
> have influenced the jury to reach a more
> severe verdict than that it would have
> otherwise. <u>Walls v. State</u>, 926 So. 2d 1156,
> 1167 (Fla. 2006) (<u>citing</u> <u>Spencer v. State</u>, 645
> So. 2d 377, 383 (Fla. 1994)).
>
> In the instant Motion, Defendant's
> various claims in Ground Three can be divided
> into three broad groups. Initially,
> Defendant contends specific comments by the
> State "invad[ed] the province of the jury" by
> improperly stating personal opinion as to
> Defendant's guilt. Next, Defendant contends
> the State misstated specific facts. Lastly,
> Defendant contends the State made an improper
> emotional appeal. However, as detailed in the

State's Response, none of Defendant's claims merit relief because the record refutes Defendant's claims that the comments were improper.

Ex. P at 248-49.

Initially, the trial court addressed the first category concerning the allegation the prosecutor invaded the province of the jury through announcing his opinion as to guilt:

> In its Response, the State contends Defendant's first category of claims is refuted by the record when the comments are placed in context. (Ex. J at 3-4.) Specifically, the State argues the prosecutor properly explained the State's burden of proof when commenting on Defendant's guilt. (Ex. J at 3-4.) The Court finds the State's argument persuasive. During closing arguments, the prosecutor correctly and plainly explained the State's burden of proof while arguing the facts in evidence support a guilty verdict. (Ex. K at 371-84.) As such, any comments regarding Defendant's guilt are well within the broad range of permissible argument during closing.

Ex. P at 249-50.

Next, the trial court addressed the second group of comments, concerning alleged misstatements of fact:

> Regarding Defendant's second category of claims, the State contends Defendant fails to demonstrate prejudice or deficiency because the purported misstatements of fact are actually supported by record testimony and are not serious enough to cast doubt on the outcome of Defendant's trial. (Ex. J at 4.) Upon review, the Court finds the record testimony refutes Defendant's allegations and

> supports the arguments offered in the State's
> Response.   Therefore, the Court adopts the
> State's Response as it relates to Defendant's
> claims in Ground Three.  See <u>Barnes v. State</u>,
> 38 So. 3d 218, 219-20 (Fla. 2d DCA 2010)
> (concluding trial courts may adopt State's
> Response in summarily denying postconviction
> relief).

Ex. P at 250.

Finally, the trial court addressed the third group of comments, concerning the prosecutor allegedly making an improper emotional appeal to the jury:

> Regarding Defendant's third category of
> claims, the State contends Defendant fails to
> demonstrate counsel was deficient because the
> purportedly improper emotional argument is
> actually a reasonable inference based upon
> record testimony.   (Ex.   J   at   5.)
> Specifically, the victim testified Defendant
> violated her at night.  (Ex. K at 201-07.)
> She further testified she was nervous and
> emotional as a result of Defendant's conduct.
> (Ex. K at 209.)   The victim's mother also
> testified her daughter was acting out of
> character and seemed emotionally upset.  (Ex.
> K  at  220-22.)     Therefore,  it  is  not
> unreasonable for the State to infer the victim
> has difficulty sleeping or suffers from
> nightmares.

Ex. P at 250.

The trial court also noted that although it did not specifically grant an evidentiary hearing as to this ground, the issue was raised and addressed at the evidentiary hearing as the state questioned Ms. Suarez, defense counsel, and she testified:

"it is her common practice and strategy not to object during closing arguments" because it draws unwanted attention to comments and suggests the defendant may have something to hide.  Id. at 251.  As noted by the court, Ms. Suarez and Mr. Beard (the other defense attorney) were experienced criminal defense attorneys at the time of trial, and had significant experience handling trials involving sex crimes and minor victims.  Id.  The court found their testimony credible and their strategy well-reasoned.  Id. Based on these factors, the court concluded defense counsel's performance was not deficient for failure to object to the state's closing remarks.  Id.

For this Court's review of Petitioner's claims of ineffective assistance of counsel, it is significant that Petitioner had the benefit of experienced counsel: "[w]hen courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger."  Cummings v. Sec'y for Dep't of Corr., 588 F.3d 1331, 1364 (11th Cir. 2009) (quoting Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000)), cert. denied, 562 U.S. 872 (2010).  The Court has reviewed the evidentiary hearing testimony of both Sandra Suarez and Joshua Beard and the remainder of the transcript.  Ex. P at 792-850.  Ms. Suarez testified as to her extensive experience, id. at 796-97, and she explained why she did not object during the prosecutor's

closing argument.  Id. at 799-800.  Mr. Beard also testified as
to his extensive experience with both criminal cases and capital
sexual battery cases.  Id. at 829—30.

Defense counsels' strategic decisions were not so patently
unreasonable that no competent attorney would have made those
decisions.  Indeed, the trial court found the strategy well-
reasoned and the 1st DCA affirmed the decision.  Ex. W.  For the
reasons stated by the trial court, the prosecutor's comments were
not so egregious or unfounded to require objection.  There was no
deficiency in counsel's performance because the prosecutor's
comments were not improper as they were based on logical inferences
based on testimony and evidence.  Also, the comments were not so
harmful as to require a new trial or so inflammatory that the jury
reached a more severe verdict based on the comments.  As such, any
failure on defense counsel's part to object during closing argument
did not prejudice Petitioner.  There is no reasonable probability
that the outcome of the proceeding would have been different had
counsel objected to the comments Petitioner references under
ground four.

Of importance, attorneys are allowed wide latitude during
closing argument as they review evidence and explicate inferences
which may reasonably be drawn from it.  Tucker v. Kemp, 762 F.2d
1496, 1506 (11th Cir. 1985).  In order to establish a substantial

error by counsel for failure to object to prosecutorial misconduct, the prosecutor's "comments must either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than it would have otherwise." Walls v. State, 926 So. 2d 1156, 1167 (Fla. 2006) (per curiam) (citation omitted). Also, there must be a showing that there was no tactical reason for failure to object. Id. Without a showing of the above, a petitioner fails to demonstrate the requisite prejudice. Id.

In this case, the comments of the prosecutor did not deprive Petitioner of a fair and impartial trial. Also, they were not so inflammatory as to result in a more severe verdict than was demonstrated by the state's evidence. Upon review, there was substantial and very strong testimonial evidence presented at trial against Petitioner. In fact, the victim identified Petitioner as the perpetrator and testified as to his actions. The evidence showed the victim had suffered a blunt force trauma injury to her hymen. Any failure on defense counsel's part to object to the state's closing argument did not contribute significantly to the verdict. Also, defense counsel provided a tactical reason for not objecting to the state's closing argument.

Failure to object during closing argument rarely amounts to ineffective assistance of counsel, particularly if the errors, if any, are insubstantial. Here, at most, there was one, somewhat questionable comment made by the prosecutor and not objected to by defense counsel ("Is he guilty of battery [the instructed lesser included offense of sexual battery], absolutely"), Ex. E at 373; however, there was no prejudice as the jury convicted Petitioner of the greater offense, sexual battery, and error, if any, was insubstantial. Ex. A at 148.

Although the prosecutor said the victim told the jury Petitioner, with his hands, touched both the victim's breasts and vagina, Ex. E at 375, the victim's testimony at trial was that Petitioner touched her breasts. Ex. D at 200. The CPT video played for the jury, however, included the victim's statement that Petitioner used his hands to touch "[a]ll over my breasts and my private." Id. at 278. Any failure to object to the closing argument with respect to the prosecutor's statement under these circumstances did not amount to deficient performance. More importantly, error, if any, was not substantial because there was direct trial testimony by the victim that Petitioner committed a sexual battery by placing his penis upon the victim's vagina and

Petitioner committed lewd and lascivious molestation by touching the victim's breasts.[4]

Additionally, the victim testified she feared Petitioner. Id. at 204. The victim attested Petitioner hit her with a belt or cord. Id. The victim said she finally felt safe enough to tell her mom what had happened when Petitioner went to jail. Id. at 207. The trial court found the strategic decision not to object to prosecutorial comments regarding the victim's state of mind was reasonable.

Defense counsel took a different tactic. She decided not to interrupt the prosecutor's closing argument, which may draw unwanted attention to comments and cause the jurors to believe the defense was trying to hide or cover-up something. Instead of objecting to multiple comments, defense counsel addressed the issues in her closing argument. Ex. E at 389. She said when the victim said she felt safe, according to her, she just said Petitioner "messed" with her and did not reveal significant details to her mother. Id. Defense counsel argued the state did not meet its burden. Id. at 390. Ms. Suarez pointed out that the victim's statement to the CPT interviewer and the victim's trial testimony

---

4 Although the victim did not testify as to penetration at trial, other evidence supported the instruction concerning penetration. Ex. E at 415-16.

were filled with many discrepancies.  Id. at 390-91.  Defense counsel emphasized the victim's lack of memory and the lack of detail in her trial testimony, asserting this demonstrated the victim was not credible enough to surmount the state's heavy burden of proving the case beyond a reasonable doubt.  Id. at 391-92. Defense counsel also relied on the victim's testimony that she was never penetrated and argued the injury to the hymen could have been caused by anything.  Id. at 392.  Finally, defense counsel reminded the jury there was no testimony that Petitioner touched the victim's vagina or her body in a lewd and lascivious manner. Id. at 400.

Again, the trial court found this strategy to be well reasoned and denied post-conviction relief.  Ex. P at 251.  Petitioner appealed the denial of his Rule 3.850 motion.  Pursuant to Wilson, it is assumed the 1st DCA adopted the reasoning of the trial court in denying the Rule 3.850 motion.  The state has not attempted to rebut this presumption.  Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA.  Ex. W.  Upon review, the Florida court's decision is not inconsistent with Supreme Court precedent, including Stickland and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland or based on an

unreasonable determination of the facts.  As such, ground four is
due to be denied.

## B.  Ground Six

In ground six, Petitioner raises a claim of ineffective
assistance of counsel, alleging counsel's failure to request a
jury instruction on the offense of battery and the offense of
unnatural and lascivious act, permissive lesser-included offenses
of lewd and lascivious molestation, amounted to deficient
performance.  Petition at 17.  At the evidentiary hearing, defense
counsel explained that the defense strategy was that Petitioner
did not do it.  Ex. P at 800.  These suggested offenses were not
standard or required instructions, and defense counsel, based on
the chosen defense at trial, decided not to request these
instructions.  Id. at 800-801.  Ms. Suarez testified her strategy
was consistent with Petitioner's wishes that his defense was that
he was not guilty of any offense.  Id. at 801.

The trial court, in denying this post-conviction claim,
referenced the evidentiary hearing testimony of defense counsel,
stating the trial strategy was to deny that any offense occurred
rather than arguing a lesser offense occurred.  Ex. P at 253.
"Both Ms. Suarez and Mr. Beard repeatedly maintained Defendant
agreed with this strategy and that arguing for additional lesser
included offenses would be inconsistent with Defendant's trial

25

strategy." Id. (citations omitted). As such, the court found this claim to be without merit and denied post-conviction relief. Id.

The record demonstrates counsel did not object to the jury instruction on lewd or lascivious molestation. Ex. D at 344, 357. The defense did not ask for additional instructions. Id. at 349. In closing argument, in accordance with the defense strategy, Ms. Suarez argued there was no lewd or lascivious touching as "you [the jury] didn't hear any evidence that supports that lewd and lascivious." Ex. E at 398. She argued a simple touch does not amount to a lewd and lascivious act. Id.

The record shows Petitioner was charged by information with lewd or lascivious molestation. Ex. A at 7. Specifically, in count three, the information charged Petitioner did, "on one or more occasions in a lewd or lascivious manner[,] intentionally touch the breast, genitals, genital area, or buttocks, or the clothing covering them of A.B., a child less than 12 years of age[.]" Id.

In the Petition, Petitioner argues, "it was never established that it [the touching of the victim] was in a lewd or lascivious manner as per the definition." Petition at 17. The jury concluded otherwise. The court instructed the jury that lewd and lascivious means "a wicked, lustful, unchaste, licentious sensual

intent of the person doing an act." Ex. E at 416. The jury returned a verdict finding Petitioner guilty of lewd or lascivious molestation. Id. at 434; Ex. A at 149.

Upon examination of the trial testimony, the evidence presented at trial sufficiently supports the verdict. The jury found the accusation proven beyond a reasonable doubt. In finding the state proved all elements of the offense, the jury completed its deliberation. The Court assumes the jury followed the law and the instructions. Notably, for the sexual battery count, the trial court instructed the jury: "if you decide that the main accusation has not been proven beyond a reasonable doubt, you will next need to decide if the defendant is guilty of any lesser included crime." Ex. E at 417. See Sanders v. State, 946 So. 2d 953, 958 (Fla. 2006) (referencing Fla. Std. Jury Instr. (Crim.) 3.4).

In Strickland, the Supreme Court opined: "[a] defendant has no entitlement to the luck of a lawless decisionmaker[.]" Strickland, 466 U.S. at 695. Thus, Petitioner's argument that there may have been a possibility of a jury pardon cannot form the basis for a finding of prejudice under the Strickland standard. Sanders, 946 So. 2d at 960. Indeed, this Court has recognized,

> under Strickland, the Court must presume the
> jury acted according to law, and that to
> assume, after finding a defendant guilty of

27

the main accusation, the jury "would have used its power to pardon [the defendant] necessarily assumes that the jury would have disregarded the trial court's instructions." See Torres v. Sec'y, Dep't of Corr., No. 16-17325-E, 2017 WL 5997387, at * 7 (11th Cir. June 2, 2017). See also Santiago v. Sec'y, Fla. Dep't of Corr., 472 F App'x 888, 889 (11th Cir. 2012) (per curiam) (State court did not unreasonably apply Strickland, explaining: "The jury in [the defendant's] trial concluded that the evidence against him supported his conviction for the greater offenss on which it was instructed; therefore, even if the lesser-offense instructions had been given, the jury would not have been permitted to convict [the defendant] of the lesser included offenses because it had concluded that the evidence established that he was guilty of the greater offenses.").

Rosato v. Sec'y, Dep't of Corr., No. 8:14-cv-3040-T-35AEP, 2018 WL 8895808, at *28 (M.D. Fla. Mar. 29, 2018).

Thus, since the jury found the evidence sufficient to establish Petitioner's guilt of the primary offense of lewd and lascivious molestation, under Florida law, the jury would not have been allowed to find Petitioner guilty of a lesser offense; therefore, the possibility of a jury pardon does not satisfy the calculus of prejudice in assessing the claim of ineffective assistance of counsel. Thus, any failure on counsel's part to request instructions on permissive lesser-included offenses cannot satisfy the prejudice prong of Strickland. Since he cannot

satisfy the prejudice prong, Petitioner is not entitled to habeas relief on this ground.

The 1st DCA's affirmance of the decision of the trial court denying the post-conviction motion is an adjudication on the merits entitled to AEDPA deference. Therefore, the Court will employ the "look through" presumption. The Court will "look through" the unexplained 1st DCA's decision to the last related state court decision (the trial court's decision denying post-conviction relief) and will presume the unexplained 1st DCA's decision adopted the same reasoning as the trial court. Wilson.

In this regard, the trial court appropriately referenced the Strickland standard in its decision. The Court is convinced that fair-minded jurists could agree with the trial court's decision. Thus, the trial court's ruling affirmed by the 1st DCA is entitled to deference. The decision is not inconsistent with Supreme Court precedent, and the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts. Petitioner is not entitled to relief on ground six.

## C. Ground Seven

In his seventh ground, Petitioner claims his counsel was ineffective because counsel failed to impeach the victim's testimony. Petition at 18. At the evidentiary hearing on the

Rule 3.850 motion, Ms. Suarez testified she had a strategy regarding the impeachment of the child victim:

> We used mostly the contradictions that the child had between her statement in the CPT interview that was played to the jury to the testimony of the mother who testified that the girl likes attention, that the girl observed the fights between her [the mother] and her husband [Petitioner], and I believe that was it, her inconsistencies with the CPT interview and the statements from the mother that contradicted her statement in court.

Ex. P at 801-802.

Ms. Suarez noted she argued the inconsistencies in closing argument, comparing the CPT statement to the child's trial testimony and to the mother's statements. Id. at 802. Ms. Suarez explained that she would not cross-examine as rigorously a child victim compared to an adult. Id. She believed that pushing too hard would have a negative impact on the jury. Id.

The record demonstrates Ms. Suarez took into consideration the fact that the victim was a child and conducted her cross-examination accordingly. Ex. D at 209-13. Ms. Suarez asked about the victim's injury in February which took place at school. Id. at 210-11. Ms. Suarez inquired as to whether the victim was bleeding and taken to the hospital at that time. Id. Ms. Suarez also asked if the victim's mother had applied medication to the victim's vagina on two different occasions in May. Id. at 211.

Ms. Suarez inquired as to whether Petitioner had previously hit the victim and whether A.B. was unhappy with being struck. Id. at 212. Upon inquiry, the victim testified she had never seen her mother arguing with Petitioner. Id. The victim admitted she had seen Petitioner with other women. Id. at 212-13.

Petitioner raised this claim of failure to properly impeach the victim in his post-conviction motion, and the trial court denied relief. Ex. P at 253-56. The 1st DCA affirmed. Ex. W. As noted previously, the court set forth the two-pronged Strickland standard of review before addressing the claims. Finding no deficient performance or prejudice, the court denied relief. Ex. P at 253-56.

Petitioner asserts defense counsel was ineffective for failing to properly impeach the victim's testimony by attacking the victim's credibility and veracity by highlighting the inconsistencies between the victim's deposition, the CPT interview, and trial testimony. The trial court, in rejecting this contention, found counsel had questioned the victim, attempting to discredit her testimony and demonstrate bias against Petitioner. Id. at 254. Of note, the court also pointed out that defense counsel managed, on cross-examination of the victim's mother, to elicit the desired testimony. Id. See Ex. D at 226-31. Indeed, the record shows defense counsel cross-examined the

victim's mother and managed to obtain testimony which directly contradicted some of the victim's testimony. Id. Defense counsel also elicited testimony from the victim's mother concerning the victim's desire for attention. Id.

Of import, the trial court noted defense counsel opted to use closing argument to point out the inconsistencies and discrepancies between the victim's deposition, the CPT interview, and trial testimony, a gentler or softer approach used to challenge the victim's testimony without running the risk of alienating the jury. Ex. P at 255. See Ex. E at 389-401. The court concluded: "the record refutes Defendant's claim that counsel was deficient because counsel put forth a reasonable defense challenging the victim's credibility." Ex. P at 255.

After taking into consideration the evidentiary hearing testimony of Ms. Suarez, the court found counsel's strategy to be well reasoned, for which her performance could not be deemed deficient for failing to conduct a more vigorous cross-examination. Id. Even assuming deficiency, the court found Petitioner failed to establish prejudice. Id. at 255-56. After recognizing minor inconsistencies in the victim's statements, the court still found: "none of the inconsistencies identified by Defendant challenge the victim's testimony that Defendant entered her room at night on multiple occasions, removed her clothing and

sexually assaulted her." Id. at 256. As such, the court found Petitioner failed to demonstrate either deficient performance or prejudice and ultimately denied post-conviction relief. Id.

The 1st DCA per curiam affirmed this decision. Ex. W. The 1st DCA's decision is an adjudication on the merits and is entitled to deference under 28 U.S.C. § 2254(d). Applying Wilson's look-through presumption, the rejection of the claim of ineffective assistance of counsel for failure to adequately and properly impeach the victim's testimony was based on a reasonable determination of the facts and a reasonable application of Strickland. The 1st DCA's decision affirming the trial court is not inconsistent with Supreme Court precedent, and the state court's adjudication of the claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts.

As the trial court noted, defense counsel put forth a reasonable defense challenging the victim's credibility through cross-examination of both the victim and her mother, and by presenting a closing argument focusing on the discrepancies in the victim's testimony compared with her prior statements. Indeed, "[t]here are countless ways to provide effective assistance in any given case." Strickland, 466 U.S. 689. In this instance, rather than aggressively attacking a child victim through cross-

examination, defense counsel chose to less aggressively examine the child victim and then, through cross-examination of the victim's mother, achieve the desired results. Furthermore, rather than alienating the jury by aggressively attacking the child victim's testimony, defense counsel used closing argument to point out the discrepancies in her statements and testimony.

This Court, when considering a claim of ineffective assistance of counsel, must try to eliminate the distorting effects of hindsight. Id. Although every attorney may not have chosen the same approach or strategy as rendered at Petitioner's trial, Petitioner's counsel's performance did not so undermine the proper functioning of the adversarial process that Petitioner was deprived of a fair trial. Petitioner has failed to satisfy the Strickland requirements and he is not entitled to habeas relief on ground seven.

### D.  Ground Nine

In his ninth ground for habeas relief, Petitioner raises a claim of ineffective assistance of counsel for failure to investigate, consult, and obtain an obstetrician/gynecologist (ob-gyn) expert witness to refute Ms. Kristi Green's trial testimony. Petition at 24.  Petitioner asserts this type of testimony was essential to counter Ms. Green's testimony that the healing partial transactional hymenal tear was caused by blunt force trauma.  Id.

at 25.  Additionally, Petitioner avers defense counsel should have interviewed Dr. McIntosh pretrial to obtain the photograph of the healing tear.  Id.  Petitioner surmises that an expert would have been able to evaluate the photograph of the healing tear and possibly or likely determine the hymen had been torn long ago and find the tear caused by rigorous activity, not blunt force trauma. Id.  This claim is exhausted as it was presented in Petitioner's post-conviction motion and, after denial, briefed on appeal.  Ex. Q; Ex. W.

In denying post-conviction relief, the trial court, after conducting an evidentiary hearing, found defense counsel's performance was not rendered deficient for failing to call an expert to testify.  Ex. P at 259-61.  The trial court relied on the testimony of Ms. Suarez that she had reviewed the victim's injuries and did not believe an expert could refute Ms. Green's testimony and, taking this into account, counsel reached the conclusion there was no basis for obtaining and calling an expert to attempt to challenge Ms. Green's testimony.  Id. at 260.  More importantly, the court noted, Ms. Suarez believed obtaining a medical expert would harm Petitioner.  Id.  Finally, the court concluded, based on defense counsel's testimony, Petitioner was aware there would be no expert witness for the defense and agreed with the trial strategy.  Id.

The trial court also considered Mr. Beard's evidentiary hearing testimony in making its decision on this claim of ineffective assistance of counsel. Id. Based on the nature of the injuries, the defense decided any additional medical expert testimony was unnecessary, and Petitioner was aware of the trial strategy and agreed with it. Id. The trial court found the trial strategy well-reasoned and counsel's performance well within the range of the standard of reasonableness. Id. at 260-61.

Review of the evidentiary hearing transcript reveals Ms. Suarez decided not to obtain an expert because she determined an expert would not benefit Petitioner's case. Ex. P at 803. Instead, the defense employed the strategy of enlisting Mr. Beard, very experienced counsel in sexual battery cases, to cross-examine Ms. Green. Id. In doing so, defense counsel conducted research and obtained a copy of the pictures taken of the victim to verify Ms. Green's conclusion. Id. at 804. Ms. Suarez explained, "we didn't use the pictures because they were not to our advantage." Id. She testified, if the defense had hired an expert, the expert would have stated the victim's injuries were suffered by penetration, consistent with Ms. Green's testimony and the photograph. Id. at 806. Of import, Ms. Suarez testified Mr. Beard had spoken to a doctor that he had worked with previously, and the doctor told Mr. Beard the injuries were caused by blunt

force trauma. <u>Id</u>. at 809. Ms. Suarez testified, after reviewing the picture, she was convinced there was clear injury to the hymen. <u>Id</u>. at 815. Mr. Beard agreed and concluded the defense was not going to be able to obtain another opinion that would change the medical assessment that the injury to the vagina was caused by blunt force trauma. <u>Id</u>. at 835.

The record demonstrates the defense made the strategic decision to rely on cross-examination of Ms. Green and not hire a defense expert because defense counsel believed, after a thorough assessment of the evidence, another expert would not be able to provide any further testimony beyond what was elicited from the state's expert. In fact, the defense feared a defense expert's testimony would harm the Petitioner's case, and this conclusion was based on investigation. The record shows Mr. Beard had spoken with a doctor, and the doctor reached the same conclusion as Ms. Green, that the injury was caused by blunt force trauma. This decision not to call an expert to address the cause of injury was a strategic decision: "[w]hich witnesses, if any, to call . . . is the epitome of a strategic decision, and it is one that [a court] will seldom, if ever, second guess." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir. 1995), <u>cert. denied</u>, 516 U.S. 856 (1995).

There is no expectation that competent counsel will be flawless in his or her performance. <u>Richter</u>, 562 U.S. at 110. To

demonstrate ineffectiveness, the decision must be so patently unreasonable that no competent attorney would have chosen that path.  Here, the attorneys assessed the situation, considered the state's evidence, sought the opinion of a doctor, and then reasonably decided on a trial strategy.

In closing argument, defense counsel argued the injury to the hymen could have been caused under any circumstance, including sports, horseback riding, and falling.  Ex. E at 392.  Ms. Suarez also argued the injury could have been caused by an untrained person, like the victim's mother, who inserted something in the child's vagina to treat an infection.  Id. at 393.

Defense counsel's representation was not so filled with serious errors that defense counsel was not functioning as counsel guaranteed by the Sixth Amendment.  With respect to this claim, Petitioner failed to satisfy the performance prong of Strickland. Bester, 836 F.3d at 1337.  The Court need not address the prejudice prong.

The state court's determination is consistent with federal precedent.  Counsel is given wide latitude in making tactical decisions, like selecting whom to call as a witness.  The decision to rely on cross-examination of Ms. Green and not to call an expert under these circumstances was not so patently unreasonable that no competent attorney would have made that decision.  Petitioner's

counsel made a strategic decision to rely on effective cross-examination of the state's witness, and this tactical decision is entitled to deference and will seldom, if ever, be second guessed. See Parlaman v. Sec'y, Dep't of Corr., No. 8:14-cv-2644-T-23TGW, 2018 WL 1326891, at *6 (M.D. Fla. Mar. 15, 2018) (recognizing entitlement to deference for strategic decision in matters normally entrusted to counsel). Here, the court will not second guess counsel's decision as the decision as to whether to present an expert is a matter normally entrusted to counsel, and in this case, counsel had a well-founded fear that a medical expert would harm the defense's case rather than help it.

The 1st DCA per curiam affirmed the trial court's decision. Ex. W. The Court will presume the state court adjudicated the claim on its merits as there is an absence of any indication or state-law procedural principles to the contrary. Applying the "look-through" presumption of Wilson, the rejection of the claim of ineffective assistance of counsel for failure to present an expert to counter the testimony of Ms. Green was based on a reasonable determination of the facts and a reasonable application of Strickland. Petitioner has failed to show there was no reasonable basis for the 1st DCA to deny relief. The state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable

determination of the facts.  Therefore, Petitioner is not entitled to habeas relief on this ground.

### E.  Ground Ten

In ground ten, Petitioner claims his trial counsel was ineffective "as she failed to adhere to the rules of discovery as she failed to videotape the deposition of AB." Petition at 27. This claim has no merit.  The record demonstrates the child victim deposition was videotaped.  At the evidentiary hearing, the prosecutor advised the trial court the deposition was videotaped and a courtesy copy had been provided to the court.  Ex. P at 848-49.  The court confirmed the videotaped had been provided.  Id. at 849.

Petitioner surmises counsel could have had the videotape reviewed by a child psychologist to evaluate the victim's demeanor, body language, and possible signals of being untruthful.  Petition at 27.  More generally, Petitioner claims his counsel's performance was deficient for failure to have the deposition videotaped and for failure to consult a child psychologist concerning the victim's character and credibility, as would be evidenced by a videotape of the deposition.  Id.

Notably, the trial court denied Petitioner's claim finding the state produced a copy of the victim's videotaped deposition and filed it with the court.  Ex. P at 261.  In addition, the

court recognized that Ms. Suarez testified at the evidentiary hearing she was aware of the deposition and she did not believe it would have been beneficial to the defense to consult with a child psychologist. Id. at 261-62. See Ex. P at 818-819.

At the evidentiary hearing, co-defense counsel, Joshua Beard, explained that employment of a child psychologist is typically done for a younger victim when challenging whether the CPT interview of the victim is forced, pressured, or coerced. Ex. P at 832-33. Mr. Beard did not consider coercion to be an issue in this case and the defense was not disputing the manner of the CPT interview. Id. at 833-34.

Finding Petitioner did not elicit any testimony or produce any evidence to support his claim that a child psychologist's testimony would have changed the outcome of the trial, the court determined defense counsel used sound trial strategy and Petitioner's claim was based on unsupported speculation. Id. at 262. The court denied relief on this ground. Id.

The trial court recognized the two-pronged Strickland standard before addressing this claim. The court found the allegation that counsel was ineffective for failure to record the victim's deposition was without merit. Ex. P at 262. The court further found defense counsel used sound trial strategy in their approach to the victim's deposition testimony. Id. As the court

found no deficient performance, Petitioner failed to satisfy the performance prong set forth in Strickland. Without satisfying this component, Petitioner cannot prevail on his claim of ineffective assistance of counsel. See Reaves v. Sec'y, Fla. Dep't of Corr., 872 F.3d 1137, 1151 (11th Cir. 2017) ("Because both parts of the [Strickland] test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." (quoting Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)), cert. denied, 138 S. Ct. 2681 (2018).

Petitioner appealed the denial of his Rule 3.850 motion. Pursuant to Wilson, it is assumed the 1st DCA adopted the reasoning of the trial court in denying the motion. The state has not attempted to rebut this presumption. Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA. Ex. W. Upon review, the Florida court's decision is not inconsistent with Supreme Court precedent, including Strickland and its progeny. Moreover, the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts. As such, ground ten is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2.     This action is **DISMISSED WITH PREJUDICE.**

3.     The **Clerk** shall enter judgment accordingly and close this case.

4.     If Petitioner appeals the denial of his Petition for Writ of Habeas Corpus (Doc. 1)**, the Court denies a certificate of appealability.** [5]     Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.     Such termination shall serve as a denial of the motion.

---

[5] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of December, 2019.

_____
BRIAN J. DAVIS
United States District Judge

sa 11/22
c:
Shuron Antwoune Hester
Counsel of Record